UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-82 (NEB/TNL)

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

SHARON ROSS,

    Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and the defendant Sharon Ross, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. The defendant fully understands the nature and elements of the crimes with which she has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against her in the Indictment.

2. **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1



From in or about March 2021 through in or about 2022, defendant Sharon Ross knowingly participated in a scheme to defraud the federal child nutrition program, a program designed to provide free meals to children in need. The defendant obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the cost of serving meals to children. The defendant exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Rather than feed children, the defendant took advantage of the Covid-19 pandemic—and the resulting program changes—to enrich herself by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

More specifically, Ross was the executive director of House of Refuge Twin Cities, a non-profit company located in St. Paul, Minnesota. Ross enrolled House of Refuge in the Federal Child Nutrition Program under the sponsorship of first Feeding Our Future and, later, Sponsor A. Ross claimed that House of Refuge operated a food distribution sites at a dozen locations throughout the Twin Cities. Ross claimed that the food was being served by a food vendor called Brava Café, which was a restaurant in Minneapolis run by Hanna Marakegn.

Ross and Marakegn claimed that House of Refuge served nearly 900,000 meals from September 2021 through February 2022—including more than 300,000 meals during the month of September 2021 alone. These claims were fraudulent and inflated. In support of these fraudulent claims, Ross submitted fraudulent meal counts and invoices falsely claiming that House of Refuge was serving meals to

thousands of children and entitled to tens of thousands of dollars a day in federal child nutrition program funds. Ross also created and submitted fraudulent attendance rosters purporting to list the names and ages of children receiving meals at the House of Refuge sites. These rosters were fake and many of the names listed on the rosters were not real.

Based on these fraudulent claims, Ross received approximately $2,434,360 in federal child nutrition programs reimbursements for meals purportedly served to children at the House of Refuge sites. Ross split this money with Marakegn. Ross distributed hundreds of thousands of dollars to family members and used the rest of the money to fund her lifestyle, including to pay for vacations to Florida and Las Vegas, to purchase a suite at a Minnesota Timberwolves game, and to purchase a house in Willernie, Minnesota.

On or about March 30, 2021, in furtherance of this scheme, Ross sent an email to Sponsor A with the subject line "[Sponsor A] 2021 Application" that passed through servers located outside the State of Minnesota.

3.    **Waiver of Pretrial Motions**. The defendant understands and agrees that she has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, she is withdrawing any motions previously filed.

3

4.      **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.      **Additional Consequences**. The defendant understands that as a result of her conviction, she could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.      **Statutory Penalties**. The parties agree that wire fraud, as charged in Count 1 of the Indictment, carries statutory penalties of:

      a.      a maximum term of imprisonment of 20 years in prison;

      b.      a supervised release term of up to three years;

4

     c.      a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater;

     d.      assessment to the defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

     e.      a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7. **Revocation of Supervised Release.** The defendant understands that if she were to violate any supervised release condition while on supervised release, the Court could revoke her supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that she be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

     a.      Base Offense Level. The parties agree that the base offense level for wire fraud is 7. U.S.S.G. § 2B1.1(a)(1).

     b.      Specific Offense Characteristics. The parties agree that the offense level is increased by 16 levels because the loss is more than $1.5 million, but not more than $3.5 million. U.S.S.G. § 2B1.1(b)(1)(I). The parties agree that no other specific offense adjustments apply.

c.  <u>Chapter 3 Adjustments</u>. The parties agree that no Chapter 3 adjustments apply.

d.  <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.  <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category II. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  <u>Guidelines Range</u>. If the adjusted offense level is 20, and the criminal history category is II, the Sentencing Guidelines range is 37 to 46 months of imprisonment.

g.  Fine Range. If the adjusted offense level is 20, the Sentencing Guidelines fine range is $15,000 to 150,000. U.S.S.G. § 5E1.2(c)(3).

h.  Supervised Release. The Sentencing Guidelines call for a term of supervised release of between one and three years. U.S.S.G. § 5D1.2(a)(2).

9.   **Discretion of the Court**.  The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.   **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

11.   **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant

7

is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The defendant agrees that she owes restitution in the amount of $2,434,360.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed

by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count 1 of the Indictment, including but not limited to, the real property including all structures located at 312 Chippenham Lane, Willernie, Minnesota.

The defendant admits that this property is subject to forfeiture because it constitutes or is traceable to the wire fraud scheme alleged in Count 1 of the Indictment.

The Defendant consents to the entry of a money judgment forfeiture in the amount of $2,837,491, which represents the amount of proceeds she obtained from the wire fraud scheme alleged in Count 1 of the Indictment. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from her in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

15.    **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of

imprisonment above the high end of the Guidelines range of imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with her attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the United States may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range of imprisonment.

16.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.   **Complete Agreement.** The defendant acknowledges that she has read this plea agreement and has carefully reviewed each provision with his attorney.  The defendant further acknowledges that she understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

Dated:   1-10-2024

ANDREW M. LUGER
United States Attorney

BY:   JOSEPH H. THOMPSON
HARRY M. JACOBS
CHELSEA A. WALCKER
MATTHEW S. EBERT
Assistant United States Attorneys

Dated: January 10, 2024

SHARON ROSS
Defendant

Dated:   Jan 10 2024

EARL GRAY
AMANDA MONTGOMERY
Counsel for Defendant

11